IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

GREGORY J. HAGENSTEIN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-2073

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION .................................... 2

II.  PRINCIPLES OF REVIEW ............................. 2

III. FACTS ........................................... 4
    A.   Hagenstein's Education and Employment Background .......... 4
    B.   Vocational Expert's Testimony from the Administrative Hearing .... 4
    C.   Hagenstein's Medical History ......................... 5

IV.  CONCLUSIONS OF LAW ............................. 8
    A.   ALJ's Disability Determination ........................ 8
    B.   Objections Raised By Claimant ....................... 10
        1.   Dr. Goel's Opinions ......................... 11
        2.   Need for Cane or Assistive Device .................. 15

V.   CONCLUSION .................................... 16

VI.  ORDER ......................................... 16

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Gregory J. Hagenstein on October 28, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Hagenstein asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Hagenstein requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

2

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

### III. FACTS

#### A. Hagenstein's Education and Employment Background

Hagenstein was born in 1973. He is a high school graduate. Hagenstein's past relevant work includes jobs as a small products assembler, stainer, and commercial building cleaner.

#### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual with the ability to frequently lift:

> 10 pounds. This individual can stand or walk two hours in an eight hour day, can sit for six hours in an eight hour day[.] . . . His ability to push and pull, including the operation of hand and foot controls would be unlimited[.] . . . He could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds. Occasionally balance, stoop, kneel, crouch, and crawl. He would need to avoid concentrated exposure to extreme heat, hazards such as heights and machinery, he could do low stress jobs which I'm defining as occasional changes in the work setting. He could work at no more than a regular pace[.] . . . He could have only short term superficial contact with the public, coworkers or supervisors.

(Administrative Record at 77-78.) The vocational expert testified that under such limitations, Hagenstein could not perform his past relevant work. The vocational expert

testified, however, that Hagenstein could perform the following sedentary unskilled jobs: (1) document preparer (700 positions in Iowa and 64,000 positions in the nation), (2) touch-up screener (760 positions in Iowa and 50,000 positions in the nation), and (3) addresser (200 positions in Iowa and 24,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical that was identical to the first hypothetical, except that the individual would miss four or more days of work per month due to his or her impairment, and could sit for less than two hours in an eight-hour workday and stand/walk less than two hours in an eight-hour workday. The vocational expert testified that under such limitations, Hagenstein would be precluded from competitive full-time work.

### C. Hagenstein's Medical History

On September 3, 2008, Hagenstein met with Dr. Sangeeta Goel, M.D., for consultation on the possibility that he suffered from multiple sclerosis ("MS"). In reviewing Hagenstein's medical history, Dr. Goel noted a history of vertigo, ataxia, and diplopia. Dr. Goel also noted episodes of weakness in both his right and left lower extremities. Upon examination, Dr. Goel diagnosed Hagenstein with "possible" MS.

Hagenstein returned to Dr. Goel for follow-up on January 27, 2009. Dr. Goel noted that after extensive testing, it was determined that Hagenstein suffered from MS. Dr. Goel further noted that Hagenstein was started on Betaseron as treatment. Hagenstein reported that after starting treatment, he "is doing well." Dr. Goel recommended that Hagenstein continue on Betaseron.

At a follow-up appointment on July 2, 2009, Dr. Goel noted that:

> [Hagenstein] had an MRI done which showed new lesion. [He] was started on IV Solu Medrol for five days. Today, [Hagenstein] has come back for follow up. He reports that he continues to have numbness and tingling on the right leg. He also has bilateral hand numbness and tingling. His symptoms

> have decreased after Solu Medrol, but he still has some visual
> problems and some tingling and numbness.

(Administrative Record at 424.) Upon examination and review of Hagenstein's most recent MRI, Dr. Goel diagnosed Hagengstein with "worsening" MS. Dr. Goel continued Hagenstein on medication as treatment.

On August 18, 2009, Dr. Chrystalla Daly, D.O., reviewed Hagenstein's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Hagenstein. Dr. Daly determined that Hagenstein could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly also determined that Hagenstein could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Daly further found that Hagenstein's bilateral "fingering and handling are limited to frequently due to numbness and tingling episodes."[1] Additionally, Dr. Daly found that Hagenstein should avoid concentrated exposure to extreme heat and hazards, such as machinery and heights. Dr. Daly found no visual or communicative limitations. Finally, Dr. Daly noted that "twice in 10 months [Hagenstein] had to use a cane, walker or wheelchair."[2]

On September 27, 2010, Dr. Goel filled out an Iowa Department of Human Services "Report on Incapacity" for Hagenstein. Dr. Goel diagnosed Hagenstein with progressive MS. Dr. Goel noted that Hagenstein used Betaseron for treatment, with side effects of severe fatigue and flu-like symptoms. Dr. Goel opined that Hagenstein could work a

---

[1] Administrative Record at 466.

[2] *Id.* at 465.

maximum of 10-19 hours in a workweek due to left-sided weakness and difficulty walking.[3]

On November 15, 2010, Dr. John May, M.D., reviewed Hagenstein's medical records and provided DDS with a physical RFC assessment for Hagenstein. Dr. May determined that Hagenstein could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May also determined that Hagenstein could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. May further found that Hagenstein's "[b]ilateral fingering and handling are limited to frequently due to exacerbations which can cause numbness and tingling."[4] Additionally, Dr. May found that Hagenstein should avoid concentrated exposure to extreme heat and hazards, such as machinery and heights. Dr. May found no visual or communicative limitations.

On March 29, 2012, at the request of Hagenstein's attorney, Dr. Goel filled out a "Multiple Sclerosis Residual Functional Capacity Questionnaire" for Hagenstein. Dr. Goel confirmed Hagenstein's MS diagnosis, and opined that his prognosis was "guarded." Dr. Goel identified the following symptoms for Hagenstein: fatigue, balance problems, poor coordination, weakness, unstable walking, numbness and tingling, increased muscle tension, bladder problems, bowel problems, sensitivity to heat, pain, difficulty remembering, depression, difficulty solving problems, problems with judgment, and involuntary rapid eye movement. Dr. Goel noted that Hagenstein has "significant"

---

[3] Dr. Goel filled out another "Report on Incapacity" on March 28, 2011. The 2011 report was nearly identical to the 2010 report, except that in 2011, Dr. Goel opined that Hagenstein was unable to perform any kind of work. *See* Administrative Record at 607.

[4] Administrative Record at 588.

weakness in his right lower extremity and difficulty with walking and coordination. Dr. Goel further noted that Hagenstein has "worsening of muscle weakness after minimal physical activity."[5] Dr. Goel found that Hagenstein "constantly" experienced pain and fatigue severe enough to interfere with his attention and concentration. Dr. Goel also found that Hagenstein is incapable of even low stress jobs. Dr. Goel determined that Hagenstein has the following functional abilities in that he could: (1) walk 1-2 blocks, (2) continuously sit for 30 minutes, (3) continuously stand for 30 minutes, (4) sit for less than 2 hours in an eight-hour workday, (5) stand/walk for less than 2 hours in an eight-hour workday, (6) occasionally lift less than 10 pounds, but never lift more than 10 pounds, and (6) grasp, finger, and reach 10% of the time during an eight-hour workday. Dr. Goel also found that Hagenstein should avoid even moderate exposure to extreme cold or heat, and should avoid concentrated exposure to high humidity, wetness, noise, fumes, odors, dusts, gases, and hazards. Furthermore, Dr. Goel checked a box that indicated that Hagenstein would need to use a cane or assistive device when standing/walking. Lastly, Dr. Goel opined that Hagenstein would miss work due to his impairments or treatment for his impairments more than four times each month.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Hagenstein is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

---

[5] *Id.* at 613.

(1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Hagenstein had not engaged in substantial gainful activity since August 20, 2010. At the second step, the ALJ concluded from the medical evidence that Hagenstein had the following severe

impairments: multiple sclerosis, obesity, degenerative disc disease of the cervical and lumbar spine, major depressive disorder, and anxiety disorder. At the third step, the ALJ found that Hagenstein did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Hagenstein's RFC as follows:

> [Hagenstein] has the residual functional capacity to perform sedentary work . . . except: he can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and walk for 2 hours in an 8-hour workday. He can sit up to 6 hours in an 8-hour workday. His ability to push and pull hand and foot controls is unlimited within these weights. He can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme heat and hazards such as heights and machinery. He requires a low stress job, defined as occasional changes in the work setting; he can work at no more than a regular pace and could perform jobs up to the level of SVP 3-4. He should have short-term superficial contact with the public, coworkers and supervisors. He can perform frequent handling and fingering.

(Administrative Record at 30.) Also at the fourth step, the ALJ determined that Hagenstein could not perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Hagenstein could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Hagenstein was not disabled.

### B. *Objections Raised By Claimant*

Hagenstein argues that the ALJ erred in two respects. First, Hagenstein argues that the ALJ failed to properly consider the opinions of his treating neurologist, Dr. Goel. Second, Hagenstein argues that the ALJ failed to adequately evaluate Hagenstein's need for a cane or assistive device.

## 1. Dr. Goel's Opinions

Hagenstein argues that the ALJ failed to properly evaluate the opinions of his treating neurologist, Dr. Goel. Specifically, Hagenstein argues that the ALJ failed to properly weigh Dr. Goel's opinions. Hagenstein also argues that the ALJ's reasons for discounting Dr. Goel's opinions are not supported by substantial evidence in the record. Hagenstein concludes that this matter should be remanded for further consideration of Dr. Goel's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed Dr. Goel's opinions as follows:

> In his first opinion, dated September 2010, [Dr. Goel] noted [Hagenstein's] medication can cause severe fatigue, but that [he] did not require continuous in-home care and was able to care for children in his home. Dr. Goel opined [Hagenstein] could work only 10-19 hours a week and noted left sided weakness and difficulty walking. This opinion is inconsistent with his own treatment records. On September 27, 2010, [Dr. Goel] noted full strength in all extremities except the left leg which was 4/5 and no deficits in coordination or difficulty walking. [Hagenstein] was not reporting side effects or significant symptoms of fatigue to Dr. Goel. There is no

> evidence in Dr. Goel's records that support the limitation of 10-19 hours a week. His opinion is given little weight.
>
> The second statement on incapacity, dated March 2011, again stated [Hagenstein] did not require continuous in-home care and was able to care for children. Dr. Goel opined [Hagenstein] could not perform work of any kind because of lifting limitations and fear of crowds. There are no objective findings in the treatment records that support [Hagenstein] is unable to lift. He exhibited full strength of the upper extremities on examination in the last documented visit with Dr. Goel in September 2010. With respect to the inability to work because of fear of crowds, Dr. Goel did not treat [Hagenstein] for this condition and is not a specialist in the area. Moreover, [Dr. Goel] did not observe any significant psychiatric abnormality on examination that would support this conclusion. His opinion is given little weight.
>
> Dr. Goel's physical medical source statement is dated March 29, 2012. He opined [Hagenstein] had significant limitations in exertional and nonexertional area and would be absent from work more than four times each month. This opinion is not supported by his own findings on objective examination, as detailed above. Dr. Goel's last documented treatment of [Hagenstein] was in September 2010. [He] was not reporting significant fatigue at that time and the MS flare-ups were only occasional. This opinion is given little weight.

(Administrative Record at 33-34.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Goel. Moreover, in addition to thoroughly addressing and setting forth the inconsistencies between Dr. Goel's opinions and the record as a whole, the ALJ also thoroughly reviewed in detail, Hagenstein's medical history, including his treatment by Dr. Goel.[6] Furthermore, the Court finds the

---

[6] *See* Administrative Record at 31-33.

ALJ provided "good reasons" for rejecting Dr. Goel's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. For example, while Dr. Goel notes that Hagenstein complained of fatigue on four separate instances, there is no evidence in the record that Dr. Goel treated him for fatigue. In fact, Dr. Goel never provided any specific opinions on Hagenstein's difficulties with fatigue; instead, Dr. Goel simply acknowledged that Hagenstein complained of fatigue.

Hagenstein also contends that the ALJ incorrectly stated in her decision that Dr. Goel hadn't seen him since September 2010. Contrary to Hagenstein's contention, the "last documented" treatment note in the administrative record before the ALJ actually was the September 2010 treatment note. Treatment notes that indicate Dr. Goel saw Hagenstein after September 2010, in March and September 2011, and March 2012, were submitted as new and additional evidence to the Appeals Council, following the ALJ's decision. In affirming the ALJ's decision, the Appeals Council concluded that "the additional evidence does not provide a basis for changing the [ALJ's] decision."[7] The Court agrees with the Appeals Council. The new and additional evidence constitutes three treatment notes from Hagenstein's routine 6-month follow-up appointments with Dr. Goel. The treatment notes reflect that Hagenstein's treatment generally remained the same. Significantly, Dr. Goel offered no new opinions on Hagenstein's condition in those treatment notes. Therefore, having reviewed the entire record, including the new and additional evidence submitted to the Appeals Council, the Court finds that the ALJ's reasons for discounting Dr. Goel's opinions are supported by substantial evidence on the record as a whole. *See Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."). Accordingly, even if inconsistent conclusions could

---

[7] *Id.* at 2.

be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. Need for Cane or Assistive Device

Hagenstein argues that the ALJ failed to adequately evaluate whether he needed a cane or assistive device to help him walk. Hagenstein maintains that "[i]n a number of places, the record reflects [his] use of a cane."[8] Hagenstein asserts that this matter should be remanded to allow the ALJ to "analyze whether [he] requires a cane to ambulate, and if so, . . . include that requirement in the [RFC] assessment and hypothetical question to the vocational expert."[9]

Having reviewed the entire record, the Court finds Hagenstein's argument to be without merit. Hagenstein refers to only one treatment note that states he uses a cane. The other treatment notes he refers to simply indicate that he used a cane for a period of time or his doctor wanted him to attend physical therapy to see if he would "benefit" from using a cane.[10] There is no evidence in the record that Hagenstein consistently needed or used a cane to stand or walk. For example, on August 18, 2009, Dr. Daly, a non-examining consultative doctor, noted that "twice in 10 months [Hagenstein] had to use a cane, walker or wheelchair."[11] Moreover, in his testimony at the administrative hearing,

---

[8] Hagenstein's Brief (docket number 12) at 23. *See also* Administrative Record at 529 (treatment note from September 8, 2010, referring to Hagenstein using "a cane until this past week"); 531 (treatment note from September 27, 2010, referring to Hagenstein walking "with a cane"); 654 (treatment note from March 28, 2012, indicating that Hagenstein should go to physical therapy for gait training and to determine whether he "would benefit from a cane"); and 614 (questionnaire filled out by Dr. Goel checking a box that Hagenstein uses a cane when standing/walking).

[9] Hagenstein's Brief (docket number 12) at 23.

[10] *See* Footnote 8.

[11] Administrative Record at 465.

Hagenstein stated that "there's times where I use canes or walkers[.]"[12] Hagenstein's statement indicates that he does not regularly use or need a cane to help him stand or walk, but only uses a cane or walker on occasion. The Court concludes that the ALJ's decision is supported by substantial evidence on the record as a whole, and remand is unnecessary for further evaluation of whether Hagenstein needs a cane to help him walk. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

## V. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Goel. The Court also concludes that remand is unnecessary for further consideration of Hagenstein's use or need for the use of a cane. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 11th day of September, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[12] *Id.* at 74.